**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| CLINTON HOPE, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   CIVIL ACTION NO. 23-00425-TFM-B |
| | * |
| INTERNATIONAL PAPER COMPANY, | * |
| *et al.*, | * |
| | * |
| Defendants. | * |

<u>**REPORT AND RECOMMENDATION**</u>

This action is before the Court on Plaintiff Clinton Hope's motion to remand (Doc. 8). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiff's motion to remand be **DENIED**, and that Defendants Mike Closson and Jim Bruce be **DISMISSED** as parties to this action.

I.   <u>**BACKGROUND**</u>

This personal injury action arises from an October 2021 incident at International Paper Company's Riverdale mill in Dallas County, Alabama. Plaintiff Clinton Hope ("Hope"), a commercial driver who transported wood products to the mill, claims that he was seriously injured when a ladder that was provided to him at the mill failed and caused him to fall.

1

**A.    Complaint.**

On October 11, 2023, Hope commenced this action in the Dallas County Circuit Court by filing a complaint against Defendants International Paper Company ("IP"), Mike Closson ("Closson"), and Jim Bruce ("Bruce").[1]  (Doc. 1 at 18-24).  In the complaint, Hope alleged that he "was transporting wood chips by commercial vehicle" to the Riverdale mill on October 18, 2021.  (Id. at 20).  Hope stated that when he and other commercial drivers arrived at the Riverdale mill, they were "provided a ladder in order to allow them to gain access to tarp and un-tarp their commercial vehicles while unloading wood products" at the mill.  (Id.).  Hope alleged that while he was "un-tarping his commercial vehicle" at the mill, the ladder that was provided to him failed and caused him to fall and suffer "permanent and devastating injuries."  (Id.).

Hope alleged that the ladder "was designated as 'out of service'" in July 2021 due to its "defective nature . . . that compromised its functional integrity and stability."  (Id.).

---

[1] Hope also sued several fictitious defendants, "a practice which is allowed under the [Alabama] state procedural rules" but "is not generally recognized under the Federal Rules of Civil Procedure." Collins v. Fingerhut Companies, Inc., 117 F. Supp. 2d 1283, 1285 n.1 (S.D. Ala. 2000).  The Court will not consider the citizenship of the fictitious defendants in deciding the instant motion to remand.  See 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

However, Hope claimed that the "Defendants"[2] failed to properly mark and remove the defective ladder from the mill's unloading area and continued to allow it to be used by commercial delivery drivers without warning them of its dangerous condition. (Id. at 20-22). Hope asserted claims including negligence/wantonness, premises liability, and failure to maintain. (Id. at 21-23). He requested compensatory and punitive damages. (Id. at 24).

**B.   Removal.**

Defendants timely removed the case to federal court. (Doc. 1). In the notice of removal, Defendants asserted the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Id. at 3-9). Defendants asserted that there was complete diversity of citizenship because Hope was a citizen of Alabama, IP was a citizen of New York and Tennessee, and Bruce was a citizen of Texas at the time of removal.[3] (Id. at 2-6). Defendants acknowledged that Closson, like Hope, was a citizen of Alabama; however, they asserted that Closson was fraudulently joined to defeat diversity, and that the Court should consequently disregard Closson's

---

[2] Hope's complaint did not differentiate between the acts or omissions of the various Defendants, nor did it explain how Bruce and Closson were connected with IP, the Riverdale mill, or Hope's injury. (See Doc. 1 at 18-24).

[3] Hope's complaint alleged that Hope, Closson, and Bruce were "resident citizen[s]" of Alabama, and that IP was a "foreign corporation incorporated in the State of New York." (Doc. 1 at 18-19).

citizenship in the diversity analysis.[4]   (Id. at 4-6).

---

[4] Defendants attached to the notice of removal the declaration of Mike Closson dated November 8, 2023, which stated:

> 1. My name is Mike Closson.  I am an adult over the age of 19 years.  I have personal knowledge of the matters contained in this declaration.
>
> 2. I am employed with International Paper Company (IP). I am currently the mill manager at IP's Riverdale mill located in Dallas County, Alabama and have been the mill manager there since September 1, 2022.
>
> 3. Before I became the mill manager at the Riverdale mill on September 1, 2022, I lived in Newport, Kentucky and worked as the mill manager at IP's Newport, Kentucky mill.
>
> 4. I have reviewed the complaint filed by Clinton Hope in the above-referenced action . . . .  I understand that Mr. Hope alleges in his complaint that he was injured at IP's Riverdale mill on October 18, 2021. (See, e.g., Ex. 1 at ¶¶ 11, 18, 21.)
>
> 5. I was not present at the Riverdale mill on October 18, 2021.
>
> 6. I had no supervisory role at the Riverdale mill on October 18, 2021.  In fact, I did not have any role at the Riverdale mill until September 1, 2022 when I became the mill manager there.
>
> 7. At the time of Mr. Hope's alleged incident in October 2021, my job duties and responsibilities for IP did not include performing any duties or responsibilities for or at the Riverdale mill.  In addition, my duties and responsibilities at that time did not include inspecting, maintaining, or repairing any ladder at the Riverdale mill, and they did not include inspecting or maintaining the premises at the Riverdale mill.
>
> 8. I have never inspected, maintained, or repaired the ladder that Mr. Hope alleges injured him, nor was I ever in charge of doing so, supposed to have done so, or have

**C.    Motion to Remand.**

On December 11, 2023, Hope filed the instant motion to remand this action to state court for lack of subject matter jurisdiction. (Doc. 8).  In the motion to remand, Hope stated that "'Jim Bruce' in the Complaint is James B. Bruce of Prattville, Alabama." (Id. at 2).  Hope argued that complete diversity was absent because Defendants had not established that Bruce was not domiciled in Alabama during the relevant time period. (Id. at 1-4).  Hope also disputed that Closson was fraudulently joined. (Id. at 1-5).

**D.    Supplement to Motion to Remand.**

Hope requested and was granted leave to file a supplement to his motion to remand. (Docs. 10, 11).  In the supplement, Hope reported that his attorney had "learned that it is possible that two 'James Bruces' have worked at International Paper in Selma at the relevant time period." (Doc. 10 at 1).  Specifically, Hope stated that his attorney had "found Federal Election Commission

---

I ever attempted to inspect, maintain, or repair such ladder.

9. I had no knowledge that the ladder in question was allegedly defective in any way.  I did not handle the ladder in any way.

10. In short, I had nothing to do with the ladder at issue in Mr. Hope's lawsuit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

(Doc. 1 at 38-39).

records for 'James E. Bruce, Mill Manager, Prattville, Alabama, International Paper.'" (Id.). Hope stated that James E. Bruce "lives . . . in Prattville." (Id.). Hope also asserted that: "As James E. Bruce is domiciled in Autauga County, Alabama, . . . diversity does not exist and this Court should remand this case to state court." (Id. at 2).

With respect to James B. Bruce, who was originally referenced in the motion to remand, Hope stated: "Further research indicates that James B. Bruce is James Benjamin Bruce, Sr., and goes by the name Ben or Benjy. Thus, it appears that Plaintiff's Motion to remand incorrectly identified 'Jim Bruce' as James B. Bruce." (Id.).

**E.    Response in Opposition to Motion to Remand.**

Following Hope's supplement, Defendants filed a response in opposition to the motion to remand along with declarations from James Benjamin Bruce and Closson. (Docs. 12, 12-1, 12-2). Relying on averments in James Benjamin Bruce's declaration,[5] Defendants

---

[5] Defendants attached to their response the declaration of James Benjamin Bruce dated December 23, 2023, which stated:

    1. My name is James Benjamin Bruce. I am an adult over the age of 19 years. I have personal knowledge of the matters contained in this declaration.

    2. I am employed with Graphic Packaging, Inc. I am currently the HS&E Manager at Graphic Packaging, Inc. located in Cass County, Texas and have been the HS&E Manager since September 25, 2023.

3. Since moving to Texas, I consider myself to be a resident of the state with no intention of returning to the state of Alabama.

4. When presented with the job opportunity in Texas at Graphic Packaging, Inc., my wife and I decided it was best that I go move first to get established in Texarkana and she would join me after settling our affairs in Alabama.

5. My wife and I have been under contract for a home in Texarkana, Texas since September 18, 2023. We are scheduled to close on the home in early January 2024.

6. Additionally, we are in the process of selling our home in Prattville, Alabama. It was listed on September 22, 2023, and it is under contract as of December 15, 2023 with a closing date of January 15, 2024.

7. Before I became the HS&E Manager at Graphic Packaging, Inc. on September 25, 2023, I lived in Prattville, Alabama and worked as the EHS Manager at International Paper's Riverdale mill in Dallas County, Alabama.

8. I have reviewed the complaint filed by Clinton Hope in the above-referenced action . . . . I understand that Mr. Hope alleges in his complaint that he was injured at IP's Riverdale mill on October 18, 2021. (*See, e.g.*, Ex. 1 at ¶¶ 11, 18, 21.)

9. I was not present at the Riverdale mill on October 18, 2021 during the time of the alleged incident.

10. I have never inspected, maintained, or repaired the ladder that Mr. Hope alleges injured him, nor was I ever in charge of doing so, supposed to have done so, or have I ever attempted to inspect, maintain, or repair such a ladder.

11. I had no knowledge that the ladder in question was allegedly defective in any way. I did not handle the ladder in any way.

12. In short, I had nothing to do with the ladder at

asserted that Defendant James Benjamin Bruce was domiciled in Texas when Hope filed this action, making him a Texas citizen for diversity purposes and preserving complete diversity. (Doc. 12 at 2-4). Defendants further argued that even if Defendant James Benjamin Bruce was a citizen of Alabama at the time this lawsuit was filed, his citizenship should be disregarded because he had nothing to do with the ladder in question and was fraudulently joined as a defendant. (Id. at 4).

Defendants also reiterated that Closson[6] was fraudulently

---

issue in Mr. Hope's lawsuit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

(Doc. 12-1).

[6] Defendants attached to their response the supplemental declaration of Mike Closson dated December 21, 2023, which stated:

1. My name is Mike Closson. I am an adult over the age of 19 years. I have personal knowledge of the matters contained in this declaration.

2. From 1997 to 2005, I worked at the Riverdale mill in Dallas County, Alabama.

3. When I left in 2005, I did not return to Riverdale until September 1, 2022.

4. I was not present at the Riverdale mill on October 18, 2021 during the time of the alleged incident.

5. I have never inspected, maintained, or repaired the ladder that Mr. Hope alleges injured him, nor was I ever in charge of doing so, supposed to have done so, or have I ever attempted to inspect, maintain, or repair such

joined because he did not start working at the Riverdale mill until almost a year *after* the subject incident and did not visit or have any supervisory capacity for the Riverdale mill between 2005 and 2021. (Id. at 4-5). Defendants argued that James Benjamin Bruce and Closson could not be personally liable under Alabama law absent evidence of some personal participation in the wrongdoing, and they asserted that Hope had not pled and could not show such personal participation on the part of either Defendant James Benjamin Bruce or Closson. (Id. at 6).

**F.    Reply in Support of Motion to Remand.**

In his reply brief dated January 8, 2024, Hope again indicated that he intended to sue *James E. Bruce* and asserted that James Benjamin Bruce, whose declaration Defendants had submitted, was not the "Jim Bruce" named in his complaint. (Doc. 13 at 1-2). Hope stated that "Jim Bruce was (and possibly is) the mill manager

---

ladder.

6. I had no knowledge that the ladder in question was allegedly defective in any way. I did not handle the ladder in any way.

7. In short, I was not at the Riverdale mill at any time before, during, or immediately after the alleged incident to have anything to do with the ladder at issue in Mr. Hope's lawsuit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

(Doc. 12-2).

at the time of Plaintiff's accident." (Id. at 1). In contrast, Hope noted that James Benjamin Bruce "goes by the name of Benjy Bruce, not Jim Bruce" and "says that he has taken a job at Graphics Packaging in Texas and . . . is moving, or has moved, to Texarkana, Texas." (Id. at 1-2).[7] Hope stated: "Thus, it is obvious that James Benjamin Bruce is now Benjy Bruce, not Jim Bruce, who Plaintiff sued." (Id. at 2).

   **G.  Surreply in Response to Plaintiff's Reply.**

   Defendants requested and were granted permission to file a surreply to address Hope's assertion that he intended to sue James E. Bruce rather than James Benjamin Bruce. (See Docs. 15, 16). In their surreply, Defendants asserted that neither James Benjamin Bruce nor James E. Bruce is a proper defendant in this action. (Doc. 17 at 3). With respect to James Benjamin Bruce, Defendants maintained that they had provided ample evidence that he was domiciled in Texas at the time this lawsuit was filed and was not involved with the ladder in question. (Id.). As to James E. Bruce, Defendants acknowledged that he was an Alabama citizen but argued that his citizenship should be disregarded because he was fraudulently joined as a defendant. (Id. at 4). Defendants noted that James E. Bruce had not worked at the Riverdale mill since

---

[7] Hope attached a "Facebook profile and post" for Benjy Bruce which, according to Hope, "essentially say the same thing." (See Doc. 13 at 2; Docs. 13-2, 13-3).

March 2021, nearly six months before the October 2021 incident. (Id. at 4-5). Defendants further stated that James E. Bruce's position in October 2021 did not require him to engage with the ladder in question, and that James E. Bruce had no control over or involvement with the ladder.[8]  (Id. at 5).

--------

[8] Defendants attached to the surreply the declaration of James E. Bruce dated January 19, 2024, which stated:

> 1. My name is James E. Bruce.  I am an adult over the age of 19 years.  I have personal knowledge of the matters contained in this declaration.
>
> 2. I am employed with International Paper Company.  I am currently the Global Technology Director located out of the Memphis, Tennessee office and have been the Global Technology Director since March 31, 2021.
>
> 3. Since becoming Global Technology Director, I have worked remotely in Prattville, Alabama.
>
> 4. Prior to becoming the Global Technology Director, I worked as a Mill Manager for IP's Riverdale mill.  I have been employed with IP since 1989.
>
> 5. I have reviewed the complaint filed by Clinton Hope in the above-referenced action . . . .  I understand that Mr. Hope alleges in his complaint that he was injured at IP's Riverdale mill on October 18, 2021. (See, e.g., Ex. 1 at ¶¶ 11, 18, 21.)
>
> 6. I was not present at the Riverdale mill on October 18, 2021 during the time of the alleged accident.
>
> 7. Further, I was no longer working at the Riverdale mill during the time of the alleged accident.
>
> 8. I have never inspected, maintained, or repaired the ladder that Mr. Hope alleges injured him, nor was I ever in charge of doing so, supposed to have done so, or have I ever attempted to inspect, maintain, or repair such

**H.    Response to Defendants' Surreply and Motion to Conduct Limited Jurisdictional Discovery.**

The Court ordered Hope to respond to Defendants' surreply. (Doc. 18).  In his response, Hope conceded that neither he nor his attorneys "are able, in good faith, pursuant to their Rule 11 obligations to refute the sworn Declarations submitted by Defendants." (Doc. 20 at 1).  Hope asserted that the "identity of the individual or individuals responsible for maintenance or safety of the ladder is information held solely by IP."  (Id.).  Thus, Hope acknowledged that, "[a]t this stage, he lacks information to refute the declarations submitted by the Defendants or otherwise identify the correct individual or individuals." (Id. at 2).  However, Hope asked the Court to "enter an Order delaying a ruling on the Motion to Remand until he can conduct limited jurisdictional discovery."  (Id. at 3).

Contemporaneously with his response, Hope filed a motion to conduct limited jurisdictional discovery "as to (1) the identities

---

ladder.

9. I had no knowledge that the ladder in question was allegedly defective in any way.  I did not handle the ladder in any way.

I0. In short, I had nothing to do with the ladder at issue in Mr. Hope's lawsuit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

(Doc. 17-1).

and responsibilities of anyone potentially involved in inspecting, repairing, maintaining, or performing any work on the subject ladder and (2) possibly a short deposition of each of the declarants submitted by the Defendants." (Doc. 21). The undersigned found that Hope's requests for limited jurisdictional discovery were neither necessary nor proper under the circumstances of this case and denied the motion in an order dated March 27, 2024. (Doc. 30). Accordingly, Hope's motion to remand is ripe for resolution.[9]

## II. LEGAL STANDARDS

"A removing defendant bears the burden of proving proper federal jurisdiction." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) (quotation omitted). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Id.

Where the alleged basis for federal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, the removing defendant has the burden of demonstrating that there is (1) complete diversity

---

[9] Given the denial of Hope's motion to conduct limited jurisdictional discovery, his request for "an Order delaying a ruling on the Motion to Remand until he can conduct limited jurisdictional discovery" is moot.

of citizenship, meaning that the parties are citizens of different states, and (2) an amount in controversy greater than $75,000.[10] Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005); see 28 U.S.C. § 1332(a)(1). For complete diversity of citizenship to be present, "every plaintiff must be diverse from every defendant." Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1564 (11th Cir. 1994). For removed cases, diversity jurisdiction is measured "at the time of removal." PTA-FLA, Inc. v. ZTE USA, Inc., 844 F.3d 1299, 1306 (11th Cir. 2016).

"When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). In such an instance, the plaintiff "is said to have effectuated a 'fraudulent joinder,' and a federal court may appropriately assert its removal diversity jurisdiction over the case." Id. (internal citation omitted). "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

"To establish fraudulent joinder, 'the removing party has the

---

[10] There is no dispute that the amount in controversy in this action exceeds the $75,000 threshold for diversity jurisdiction.

burden of proving [by clear and convincing evidence] that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'"[11]  Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011) (per curiam) (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)).  The removing party's "burden is a 'heavy one.'"  Id.

To determine whether a case should be remanded, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff."  Crowe, 113 F.3d at 1538.  "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."  Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998).  The process for resolving a question of fraudulent joinder is "similar to that used for ruling on a motion for summary judgment."  Crowe,

---

[11] There is a third type of fraudulent joinder, "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant."  Triggs, 154 F.3d at 1287.  The parties do not suggest that this type of fraudulent joinder applies in this case.

113 F.3d at 1538. But while the court must resolve any factual disputes in favor of the plaintiff, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005). Where the plaintiff offers no evidence of his own and the defendant's sworn statements are undisputed, "the court cannot then resolve the facts in the [plaintiff's] favor based solely on the unsupported allegations in the . . . complaint." Id.

"In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" Pacheco de Perez, 139 F.3d at 1380-81 (quoting Crowe, 113 F.3d at 1538). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original). However, "[t]he potential for legal liability must be reasonable, not merely theoretical." Legg, 428 F.3d at 1325 n.5 (quotation omitted).

### III. DISCUSSION

#### A.    Defendant Closson.

The Court first addresses Hope's motion to remand as it relates to Defendant Closson. As noted, Defendants contend that the Court should disregard Hope's shared Alabama citizenship with Closson because there is no reasonable possibility Hope can

establish a cause of action against Closson. (Doc. 1 at 4-6; Doc. 12 at 4-7). Defendants have submitted two declarations from Closson. (Doc. 1 at 38-39; Doc. 12-2 at 2-3). They establish that Closson is currently the mill manager at IP's Riverdale mill and has been in his current position since September 1, 2022. (Doc. 1 at 38). They also establish that Closson previously worked at the Riverdale mill from 1997 to 2005; however, after leaving the Riverdale mill in 2005, Closson did not return to the Riverdale mill until September 1, 2022. (Doc. 12-2 at 2). Prior to becoming the mill manager at the Riverdale mill on September 1, 2022, Closson lived in Newport, Kentucky and worked as the mill manager at IP's Newport mill. (Doc. 1 at 38).

The uncontroverted testimony in Closson's declarations clearly establishes that he had no role at the Riverdale mill at or near the time of the subject incident and no involvement with or responsibility for the ladder in question. See Murray v. Walmart Inc., 2023 U.S. Dist. LEXIS 111360, at *3-4, 2023 WL 4239964, at *2 (M.D. Ala. June 28, 2023) (concluding that the current store manager at the store where plaintiff's fall occurred was fraudulently joined where her uncontroverted affidavit established that she was not employed at the store when plaintiff fell, had not been employed there prior to the date of the fall, did not begin to work at the store until more than a year after plaintiff's fall, and was a resident of another state at the time

17

of the incident); <u>Woodard v. Wal-Mart Stores E., L.P.</u>, 2010 U.S. Dist. LEXIS 23143, at *5-6, 2010 WL 942286, at *2 (M.D. Ga. Mar. 12, 2010) (finding that defendant satisfied its burden of demonstrating fraudulent joinder of the current store manager by submitting an affidavit showing that he did not work at the store at the time of the incident two years earlier).

It appears that Hope now recognizes the absence of any potential liability for Closson in this action because in his reply dated January 8, 2024 (Doc. 13), Hope stated that "it appears that the [motion to remand] now has a singular issue," which he identified as whether remand is required "when Plaintiff has established that 'Jim Bruce' is an Alabama resident." (Doc. 13 at 1). On February 9, 2024, Hope confirmed that he "lacks information to refute the declarations submitted by the Defendants or otherwise identify the correct individual or individuals" and "can no longer say, in good faith, . . . that he has correctly identified at least one individual responsible for the ladder on which he was injured." (Doc. 20 at 2; Doc. 21 at 1).

The Court considers these statements to be a tacit acknowledgement that Closson was fraudulently joined, and that Hope cannot establish a claim against Closson. Therefore, the Court finds that Defendants have shown by clear and convincing evidence that there is no reasonable possibility Hope can establish a cause of action against Closson, and as a result, Defendant

Closson was fraudulently joined.

**B. Defendant Bruce.**

Since filing his motion to remand, Hope has clarified that Defendant "Jim Bruce" named in his complaint is James E. Bruce, and not James Benjamin "Benjy" Bruce, as the parties originally believed. (See Doc. 13 at 1-2). Defendants contend that James E. Bruce's Alabama citizenship should be disregarded because he was fraudulently joined as a defendant and cannot be held liable for the allegations in the complaint. (Doc. 17 at 4). In support of their claim of fraudulent joinder, Defendants have submitted the declaration of James E. Bruce. (Doc. 17-1). James E. Bruce attests that although he previously worked as a mill manager at IP's Riverdale mill, he became IP's Global Technology Director on March 31, 2021, and has worked remotely in Prattville, Alabama since that time. (Id. at 1). James E. Bruce further avers that he never handled, inspected, maintained, or repaired the ladder in question; that he never attempted to inspect, maintain, or repair the ladder; that he was never in charge of or supposed to have inspected, maintained, or repaired the ladder; that he had no knowledge that the ladder was defective; and that he had nothing to do with the ladder in question. (Id. at 2).

In response to this information, Hope admits that he "can no longer say, in good faith, . . . that he has correctly identified at least one individual responsible for the ladder on which he was

injured." (Doc. 21 at 1; <u>see also</u> Doc. 20). Given the unrefuted evidence that James E. Bruce had not been employed at the Riverdale mill for at least six months before Hope's accident and had no involvement with the ladder in question, the Court finds that Defendants have met their burden of showing that Defendant Bruce was fraudulently joined.

**IV.   <u>CONCLUSION</u>**

Where fraudulent joinder is found, "the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." <u>Florence v. Crescent Res., LLC</u>, 484 F.3d 1293, 1297 (11th Cir. 2007). Accordingly, for the reasons stated above, it is recommended that Hope's motion to remand (Doc. 8) be **DENIED**, and that Defendants Closson and Bruce be **DISMISSED** as parties to this action.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in

accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **10th** day of **April, 2024.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**